IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERT L. HERRON | ) | Case No. 03-10383 |
| DONNA L. HERRON | ) | Chapter 12 |
| | ) | |
| Debtors. | ) | |

### OBJECTION TO CONFIRMATION OF CHAPTER 12 PLAN

Carolina Farm Credit, ACA (hereinafter "CFC"), pursuant to Rule 3015(f) of the Federal Rules of Bankruptcy Procedure and Section 1224 of the Bankruptcy Code, objects to the confirmation of the Chapter 12 Plan (hereinafter the "Plan"), filed by the above-referenced debtors (hereinafter the "Debtors") on July 2, 2002 and, in support thereof, alleges and says:

1. CFC is a federally-chartered banking corporation organized and existing under the Farm Credit Act of 1971, as amended, with its principal place of business in Statesville, North Carolina.

2. CFC is a secured creditor of the Debtor.

3. On or about December 31, 1980, The Federal Land Bank of Columbia (the "Land Bank"), predecessor in interest to CFC, loaned the debtors the principal sum of $234,000.00, and as evidence of their obligation to repay said amount, plus interest, to the Land Bank, the Debtors executed and delivered to the Land Bank a Promissory Note (hereinafter the "First Note") dated December 31, 1980, in the principal amount of $234,000.00. A true and accurate copy of the First Note and subsequent modifications thereto are attached hereto as Exhibit A and incorporated herein by reference.

4. On or about August 5, 1997, Mountain Farm Credit, ACA, predecessor in interest to CFC, loaned the Debtors the principal sum of $40,600.00, and as evidence of their obligation to repay said amount, plus interest, to the Land Bank, the Debtors executed and delivered to the Land Bank a Promissory Note (hereinafter the "Second Note") dated August 5, 1997, in the principal amount of $40,600.00. A true and accurate copy of the Second Note and modifications thereto are attached hereto as Exhibit B and incorporated herein by reference.

5. On or about March 17, 2000, CFC loaned the Debtors the principal sum of $88,500.00, and as evidence of their obligation to repay said amount, plus interest, to CFC, the Debtors executed and delivered to CFC a Promissory Note (hereinafter the

"Third Note") dated March 17, 2000, in the principal amount of $88,500.00. A true and accurate copy of the Third Note and modifications thereto are attached hereto as Exhibit C and incorporated herein by reference.

6. On or about June 19, 2000, CFC loaned the Debtors the principal sum of $6,100, and as evidence of their obligation to repay said amount, plus interest, to CFC, the Debtors executed and delivered to CFC a Promissory Note (hereinafter the "Fourth Note") dated June 19, 2000, in the principal amount of $6,100.00. A true and accurate copy of the Fourth Note and modifications thereto are attached hereto as Exhibit D and incorporated herein by reference.

7. On October 31, 2001, the Second Note, the Third Note, and the Fourth Note were modified a final time and combined into a single obligation pursuant to a Note Modification Agreement (the "Combined Note"). A true and accurate copy of the Combined Note is attached hereto as Exhibit E and incorporated herein by reference.

8. Pursuant to the terms of a Security Agreement executed by the Debtors on March 17, 2000, the obligations owing to CFC by the Debtors under the terms of the First Note and the Combined Noted are secured by the Debtors' cattle. A true and accurate copy of the Security Agreement is attached hereto as Exhibit F and incorporated herein by reference.

9. CFC duly perfected its security interest in the cattle by filing UCC-1 financing statements with the Register of Deeds for Henderson County, the Register of Deeds for Buncombe County and the North Carolina Secretary of State. True and accurate copies of the UCC-1's are attached hereto as Exhibit G and incorporated herein by reference.

10. The obligations owing by the Debtors under the First Note and the Combined Note are further secured by a Deed of Trust (the "First Deed of Trust") executed by the Debtors with respect to a tract of land containing 123 acres, composed of two contiguous parcels located in Henderson County and Buncombe County, North Carolina. The First Deed of Trust were duly recorded at Book 342, Page 537 of the Office of the Henderson County Register of Deeds and Book 965, Page 223 of the Office of the Register of Deeds of Buncombe County. A true and accurate copies of the First Deed of Trust are attached hereto as Exhibit H and incorporated herein by reference.

11. The obligations owing by the Debtors under the First Note and the Combined Note are further secured by a Deed of Trust (the "Second Deed of Trust") executed by the Debtors with respect to certain real property located on Burney Mountain Road, Buncombe County, North Carolina. The Second Deed of Trust was duly recorded at Book 1265, Page 796 of the Office of the Register of Deeds of Buncombe County. A true and accurate copy of the Second Deed of Trust is attached hereto as Exhibit I and incorporated herein by reference.

      12.    The Debtors filed for relief under Chapter 12 of the Bankruptcy Code on April 3, 2003.

      13.    As of the Petition Date, the balance owing on the First Note was $232,357.26 and the balance owing on the Combined Note was $125,374.83.

      14.    On June 24, 2003, this Court entered an Order allowing the sale of a portion of the Real Property for a purchase price of $225,000. Under the terms of the Order, all of the proceeds of the sale were to be paid to CFC. Upon information and belief the sale has not yet closed and no sales proceeds have been paid to CFC.

      15.    The Debtors' proposed Chapter 12 plan is objectionable for numerous reasons outlined below:

    a. The plan states that the $225,000 in sales proceeds has been paid to CFC. That is not correct.

    b. The plan states that after the application of the $225,000 payment, CFC will be owed approximately $105,000. The number is very low. The actual payoff after the application of the $225,000 is sale proceeds will be approximately $145,000 to $150,000.

    c. As explained above, the obligation owed by the Debtors' to CFC is secured, in part, by a lien in the Debtors' cattle. Neither the Debtors' bankruptcy schedules nor their plan contain any mention of an ownership interest by the Debtors in cattle. The plan should provide for the retention of CFC's lien in the Debtors' cattle.

    d. Section 1225(a)(5) requires that with respect to each allowed secured claim provided for by the plan, "the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim." In this case the Debtor's Chapter 12 plan treats CFC as a fully secured creditor and proposes to amortize CFC's claim over thirty years at 10% interest. If a Chapter 12 debtor utilizes the provisions of the Bankruptcy Code to cram a new loan on a creditor in the amount of the fair market value of its collateral, then the creditor is entitled to the current market rate of interest under the payment plan. See, e.g., <u>Koopmans v. Farm Credit Services of Mid-America, ACA</u>, 102 F.3d 874 (7th Cir. 1996); <u>Inn re Fischer,</u> 930 F.2d. 1361, 1364 (8th Cir. 1991); <u>In re Hardzog</u>, 901 F.2d 858, 859 (10th Cir. 1990); <u>United States v. Arnold</u>, 878 F.2d 925 930 (6th Cir. 1989). In this case, the current market interest rate for a loan of similar duration and risk to the loan forced upon CFC under the terms of the Debtor's Chapter 12 plan is twelve percent (8%). The plan is not confirmable because it proposes to pay CFC's claim at a rate of only ten percent (6%).

e.  The Debtor's plan is not confirmable because the plan has not been proposed in good faith as required by Section 1225(a)(3) of the Bankruptcy Code. In their plan, the Debtors describe the plan as both an operating and liquidation plan. More specifically, the Debtors state that they will fund the plan through the continued operation of their milking business as well as the sale of a portion of their real property. However, the monthly income and expenses listed by the Debtors in their plan reveals that the Debtors will be operating at a monthly deficit of $310.60. Accordingly, the Debtors statement that they will fund the plan through operations is impossible and false. Because operations will not fund the plan, that only leaves the liquidation of the Debtors' real property to fund the plan. CFC does not object to a liquidating plan, but the 25-year liquidation period proposed by the Debtors is absurd. If the Debtors' plan for reorganization is liquidation then 6 months and not 25 years is an appropriate time period for liquidation.

f.  The plan is also not proposed in good faith because the plan attempts to take a one-year note, which has matured, and amortize it over a 25-year period. As recognized in Colliers, "[t]he shorter the original term of the loan, the more scrutiny the court should give to a proposed long-term payout. A loan originally made for a one-year term should not be subjected to a thirty-year amortization except in unusual circumstances." L. King, 2 Colliers on Bankruptcy, 109-45[4] (15th Ed. Rev. 1999). See also In re Howard, 212 B.R. 864 (Bankr. E.D. Tenn. 1997) (setting 15 year amortization where original loan term was 15 years); In re Lupfer Bros., 120 B.R. 1002 (Bankr. W.D. Mo. 1990) (25-year payment period denied with regard to debt already matured at time of Chapter 12 petition); In re Bantam, 120 B.R. 530 (Bankr. D. Neb. 1990) (questioning propriety of 30-year amortization for a short-term obligation).

g.  The plan also is not proposed in good faith because it does not contain sufficient default provisions. The plan provides CFC with no relief should the debtor default under the terms of the plan. The plan should state that in the event the Debtor defaults on his payment obligations under the plan, CFC shall be permitted to exercise its rights under the Note and Deed of Trust and applicable state law.

WHEREFORE, Carolina Farm Credit, ACA respectfully requests the Court as follows:

1.  To deny confirmation of the Debtors' Chapter 12 plan; and

2.  For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 23rd day of July, 2003.

_____
DANIEL C. BRUTON
N.C. State Bar No. 22440
Attorney for Carolina Farm Credit

OF COUNSEL:

BELL, DAVIS & PITT, P.A.
Post Office Box 21029
Winston-Salem, NC 27120-1029
Telephone: 336-722-3700

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERT L. HERRON | ) | Case No. 03-10383 |
| DONNA L. HERRON | ) | Chapter 12 |
| | ) | |
| Debtors. | ) | |

CERTIFICATE OF SERVICE

    I hereby certify that the foregoing Objection to Confirmation of Chapter 12 Plan was served upon the following parties by mailing a copy of the same by first-class postage prepaid mail addressed as follows:

    David G. Gray, Esq.
    81 Central Avenue
    Asheville, NC 28801

This the 23rd day of July, 2003.

                                                                                                            _____
                                                                                                            DANIEL C. BRUTON
                                                                                                            State Bar No. 22440
                                                                                                             Attorney for Carolina Farm Credit, ACA